UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY, | CASE NO. C17-0707JLR |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ALIS HOMES, LLC, et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court is Plaintiff Developers Surety and Indemnity Company's ("Developers") motion for summary judgment.  (Mot. (Dkt. # 29).)  Defendant Alis Homes, LLC ("Alis") opposes the motion (Resp. (Dkt. # 31)), and Defendant Holeshot Properties, LLC ("Holeshot") has not responded (*see* Dkt.).  The court has considered the motion, Developers' and Alis's submissions in support of and in opposition to the

//

motion, the relevant portions of the record, and the applicable law.  Being fully advised,[1]
the court GRANTS the motion for the reasons set forth below.

## II.    BACKGROUND

This cases arises from a lawsuit between Holeshot and Alis in King County Superior Court ("the Underlying Suit").  (*See* Compl. (Dkt. # 1) ¶ 9); *Holeshot Props., LLC v. Alis Homes, LLC*, No. 17-2-06293-1 (King. Co. Sup. Ct.).  Holeshot, the assignee and successor in interest to PacWest Investment Group, Inc. ("PacWest"), instituted the Underlying Suit on January 11, 2017.  Holeshot engaged Alis to perform construction services as the general contractor at 4625 53rd Ave S., Auburn, Washington ("the Property").  (Compl. ¶ 9, Ex. 2 ("Underlying Compl.") ¶ 2.1.)  Alis's scope of work included installing new windows and doors, painting, remodeling the kitchen and laundry rooms, and "various other repairs" for an estimate of $43,436.53.  (*Id.*)  In the Underlying Suit, Holeshot alleges that Alis breached the parties' agreement by (1) failing to: (a) perform its work in a workmanlike manner or to perform its work at all; (b) purchase required materials; (c) use licensed, registered, and bonded subcontractors; and (2) abandoning its work.  (*Id.* ¶ 2.5.)  Holeshot also alleges that Alis "utilized inexperienced, unlicensed subcontractors to perform the [w]ork," and that the subcontractors' work "fell far below the industry standards."  (*Id.* ¶¶ 2.6-2.7.)  Holeshot further asserts that it had to hire additional contractors to fix and complete Alis's work.  (*Id.* ¶¶ 2.9, 2.16.)  Based on

---

[1] Developers requests oral argument (*see* Mot. at 1; Reply (Dkt. # 33) at 1), but the court determines that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

those alleged events, Holeshot asserted claims for breach of contract, quantum meruit, and violation of the Washington Consumer Protection Act ("CPA"), RCW ch. 19.86. (*Id.* ¶¶ 3.1-9.2.) Holeshot seeks treble damages, a constructive trust, promissory estoppel, and a remedy for unjust enrichment. (*Id.* ¶¶ 11.1-11.9.)

After Holeshot brought the Underlying Suit, Alis tendered the lawsuit to Developers for defense and indemnity. (Compl. ¶ 11.) On Developers' behalf, Claims Resource Management, Inc., acknowledged that it received the tender, investigated the tender under a reservation of rights, and retained counsel to defend Alis in the Underlying Suit. (*Id.*) Developers then brought this suit, seeking a declaration that it does not have a duty to defend or indemnify Alis. (*Id.* ¶ 15.)

On March 3, 2016, Developers issued a commercial general liability ("CGL") policy, Policy Number BIS00024679-01 ("the Policy"), to Alis. (Compl. ¶ 8, Ex. 1 (Dkt. # 1-1) ("Policy").) The Policy was effective from March 3, 2016, to March 3, 2017 (*id.*), and provides CGL coverage for "those sums that [Alis] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" (*id.* at 24). The Policy further states that Developers "will have the right and duty to defend the insured against any 'suit' seeking those damages." (*Id.*)

The Policy also contains an "Additional Conditions Endorsement." (*Id.* at 70.) That endorsement provides that

> [t]he following conditions precedent to coverage are added to and form part of the policy:

//

1. You must be named an additional insured on the commercial general liability policy of each contractor and subcontractor that performs work on your behalf . . . .

2. You must obtain a certificate of insurance from each contractor and subcontractor that performs work on your behalf . . . indicating that each such contractor and subcontractor has a commercial general liability policy in effect.

3. Both the policy within which you are named as an additional insured and the certificate of insurance you obtain must each have occurrence, general aggregate, and products-completed operations aggregate limits . . . in an amount equal to or greater than this policy.

4. You must obtain a hold harmless agreement from each of your contractors and subcontractors . . . .

(*Id.* (underlining omitted).) The Policy also includes an "Extrinsic Evidence Endorsement," which states that in determining whether Developers owes a duty to defend or indemnify, Developers "may look to extrinsic evidence outside of the allegations and/or facts pleaded by any claimant" and may "rely on extrinsic evidence to deny the defense and/or indemnity of a 'suit.'" (*Id.* at 93.) Both endorsements caution that they change the policy and instruct Alis to read them carefully. (*Id.* at 70, 93.)

Alis did not obtain any certificates of insurance or hold harmless agreements from its subcontractors. (*See* Ming Decl. (Dkt. # 30) ¶ 4, Ex. 3 at 1-3, ("Alis Discls.") (identifying subcontractors); *id.* ¶ 5, Ex. 4 at 1-3 ("Alis Admis.") (admitting that Alis failed to obtain certificates of insurance and hold harmless agreements from subcontractors); *id.* ¶ 6, Ex. 5 at 2-4 ("Alis Interrogs.") (stating that no certificates of insurance or hold harmless agreements were obtained); *id.* ¶ 7, Ex. 6 at 2 ("Alis RFPs") (same).) Alis was also not named as an additional insured on its subcontractors' policies.

(Alis Admis. at 2; Alis Interrogs. at 2-4 (stating that no policies identifying Alis as an additional insured "were obtained"); Alis RFPs at 2 (same).) Developers moves for summary judgment in its favor based on Alis's failure to comply with those conditions. (*See* Mot. at 2.) Alis does not dispute the facts upon which Developers bases its motion, but opposes entry of summary judgment.[2] (*See generally* Resp.) The court now addresses the motion.

## III.    ANALYSIS

### A.    Legal Standard

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

//

---

[2] Despite naming Holeshot as a defendant, Developers makes no argument regarding Holeshot, and Holeshot has not responded to the motion for summary judgment. (*See* Resp.; Dkt.) Although it appears that its resolution of Developers' duty to defend and indemnify Alis leaves no further issues regarding Holeshot (*see* Compl. (stating no allegations directly against Holeshot)), the court DIRECTS Developers and Holeshot to jointly file a statement of no more than two (2) pages stating what—if anything—remains pending in this matter. They must file their submission no later than Friday, April 20, 2018.

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party will bear the burden of persuasion at trial, it must establish a prima facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id.* at 1473. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine [dispute] for trial." *Id.* at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

//

//

**B.      The Motion**

Developers first requests that the court declare that Developers has no duty to defend Alis based on "extrinsic evidence"—Alis's failure to comply with the conditions precedent to coverage.[3]  (MSJ at 9-10.)  As Developers frames the issue, the court must—as a matter of first impression—determine whether the Policy's Extrinsic Evidence Endorsement is valid and thereby permits the court to consider Alis's admissions that it did not meet the necessary conditions for coverage.  (*Id.* at 8-10.)  But because Developers also seeks a declaration that it has no duty to indemnify Alis for any liability arising in the Underlying Suit—a determination that necessarily requires deciding coverage under the Policy—the court need not answer that novel question.  Rather, the court analyzes whether Alis has coverage under the policy.

The duty to indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the policy."  *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007) (internal quotation marks omitted); *see also Mut. of Enumclaw Ins. Co. v. T & G Constr., Inc.*, 199 P.3d 376, 383 (Wash. 2008) ("The insured bears the burden of showing that coverage exists; the insurer that an exclusion applies.").  Thus, "[t]he duty to indemnify exists only if the insurance policy actually covers the insured's liability."  *Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234, 1240 (Wash. 2017).

---

[3] A condition precedent is an event that "must exist or occur before there is a right to immediate performance."  *224 Westlake, LLC v. Engstrom Props., LLC*, 281 P.3d 693, 708 (Wash. Ct. App. 2012).  In the insurance context, the Washington Supreme Court eschews formalistic distinctions between conditions precedent and covenants.  *Or. Auto. Ins. Co. v. Salzberg*, 535 P.2d 816, 819 (Wash. 1975).

An insurer's duty to defend, however, is "broader than the duty to indemnify."[4] *Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010). If an insurance policy "conceivably covers allegations in the complaint," the insurer must defend. *Expedia, Inc. v. Steadfast Ins. Co.*, 329 P.3d 59, 64 (Wash. 2014). The duty to defend is determined from "the 'eight corners' of the insurance contract and the underlying complaint." *Id.* at 65-64. Nevertheless, an insurer's duty to defend ends when a court declares that the party is not insured under the contract.[5] *See Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 694 (Wash. 2013) ("After obtaining a declaration of noncoverage, an insurer will not be obligated to pay *from that point forward*." (internal quotation marks omitted)); *United Servs. Auto. Ass'n v. Speed*, 317 P.3d 532, 539 (Wash. Ct. App. 2014) ("If an insurer does defend, a finding of no coverage eliminates the duty to defend only from that point forward.").

The plain language of the Policy makes clear that Alis is not entitled to coverage. (*See* Policy at 70; MSJ at 10 (arguing that Developers has no duty to defend or indemnify "as a result of Alis['s] failure to satisfy the conditions precedent").) The Policy required

---

[4] "If the insurer is uncertain of its duty to defend, it may defend under a reservation of rights and seek a declaratory judgment that it has no duty to defend." *Woo*, 164 P.3d at 460. "A reservation of rights is a means by which the insurer avoids breaching its duty to defend while seeking to avoid waiver and estoppel." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 58 P.3d 276, 282 (Wash. 2002). When the insurer defends under a reservation of rights, "the insured receives the defense promised and, if coverage is found not to exist, the insurer will not be obligated to pay." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1127 n.3 (Wash. 1998).

[5] Once an insurer's duty to defend terminates because a court determines that there is no coverage under the policy, the insurer may not seek reimbursement for defense costs already incurred. *Nat'l Surety*, 297 P.3d at 695 ("We hold that insurers may not seek to recoup defense costs incurred under a reservation of rights defense while the insurer's duty to defend is uncertain.").

Alis to obtain certificates of insurance and hold harmless agreements with its subcontractors and to be named as an additional insured on its subcontractors' own CGL policies. (Policy at 70.) Alis admits that it met none of the conditions. (Alis Admis. at 1-3; Alis Interrogs. at 2-4; Alis RFPs at 2.) The fact that Alis was "simply . . . unaware of the requirements" because they "were buried in such a long insurance policy" does not compel a different result. (Hoover Decl. (Dkt. # 32) ¶ 6); *Int'l Marine Underwriters v. ABCD Marine, LLC*, 313 P.3d 395, 402 n.14 (Wash. 2013) ("An insured has an affirmative duty to read his or her policy and to know its terms and conditions."). Therefore, Alis is not entitled to coverage, and Developers has no duty to continue defending Alis or to indemnify Alis for any liability incurred in the Underlying Suit.

Alis's assertions to the contrary are unavailing. First, Alis argues that Washington law clearly prohibits an insurer from looking "to facts outside the four corners of a complaint to deny a duty to defend." (Resp. at 2.) Even if it is true that the Extrinsic Evidence Endorsement conflicts with Washington law on the use of extrinsic evidence in determining a duty to defend, the court need not decide whether the Washington Supreme Court would invalidate that provision. Developers has defended Alis subject to a reservation of rights—a point that Alis does not contest. (Compl. ¶ 11 (stating that Developers "retained counsel to defend Alis in the Underlying Lawsuit"); *see also* Resp.); *Shilo Inn, Seaside Ocean Front, LLC v. Grant*, No. 08-CV-168-BR, 2009 WL 2611217, at *1 (D. Or. Aug. 24, 2009) (drawing facts from "uncontroverted allegations in the parties' pleadings" in ruling on summary judgment). Thus, there is no indication that Developers breached its duty to defend, and the question before the court is whether

Developers must continue defending Alis in the Underlying Suit. *Cf. Nat'l Sur.*, 297 P.3d at 693-94 (stating that by defending under a reservation of rights, "the insured receives the benefit of a defense until a court declares none is owed"). As addressed above, the court need only determine whether there is coverage under the Policy to answer that question. There is not.

Alis also argues that requiring compliance with the Additional Conditions Endorsement would be unfair and against public policy. (*See* Resp. at 3.) Although Alis does not explicitly contend that Developers must demonstrate actual prejudice resulting from Alis's failure to comply with the conditions, Alis cites *Oregon Automobile Insurance Co. v. Salzberg*, 535 P.2d 816 (Wash. 1975), which enunciates that rule. In *Salzberg*, the Washington Supreme Court held "that an alleged breach of a cooperation clause may be considered substantial and material, and may effect a release of an insurer from its responsibilities, only if the insurer was actually prejudiced by the insured's actions or conduct." *Id.* at 819. Washington courts have also applied that rule to notice and consent to settlement requirements. *See Staples v. Allstate Ins. Co.*, 295 P.3d 201, 208 (Wash. 2013). Although Washington courts have not addressed the rule in the context of an Additional Conditions Endorsement, the failure to comply with the conditions expands Developers' risk and is therefore "substantial and material." *Salzberg*, 535 P.2d at 819 (stating that the actual prejudice rule seeks to prevent against "a questionable windfall for the insurer at the expense of the public"); *cf. Saunders v. Lloyd's of London*, 779 P.2d 249, 252 (Wash. 1989) (recognizing in the context of coverage by estoppel than an insurer will be prejudiced "when the insured attempts to

broaden coverage to protect against risks not stipulated in the policy"); *Mt. Hawley Ins. Co. v. Total Building Sys., Inc.*, No. CV-06-2473-PCT-NVW, 2008 WL 2757076, at *7 (D. Ariz. July 14, 2008). (stating that "the purpose of the agreement was for the insurer to take on the risk of liability from [the contractor's] work, but not ultimately from its subcontractors' work"). Thus, Alis's invocation of *Salzberg* does not change the court's analysis.

Finally, Alis argues that the Additional Conditions Endorsement "should be strictly construed" in its favor because it excludes coverage.[6] (Resp. at 6.) They contend that because some of the claims in the Underlying Suit "are wholly unrelated to work performed by subcontractors," denying coverage based on the Endorsement "would be unduly harsh and overly technical."[7] (*Id.*; *see also* Hoover Decl. ¶¶ 7, 14.) An endorsement modifies a policy and supersedes "the original terms of the underlying insurance policy." *Kut Sue Lui v. Essex Ins. Co.*, 375 P.3d 596, 600 (Wash. 2016). Despite Alis's characterization, "[a]n ambiguity exists in an insurance contract" requiring construction of the exclusion against the insurer only "if the language is fairly susceptible to two different reasonable interpretations." *Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 874 P.2d 142, 145 (Wash. 1994); *see also Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1172 (Wash. 2000) ("Policy ambiguities, particularly with respect to exclusions,

---

[6] Exclusions "subtract" from coverage. *Harrison Plumbing & Heating, Inc. v. N.H. Ins. Grp.*, 681 P.2d 875, 880 (Wash. 1984).

[7] In addition to failing to demonstrate contractual ambiguity requiring construction in its favor, Alis cites no authority other than *Salzberg* for this proposition. (*See* Resp. at 6.)

are to be strictly construed against the insurer."); *cf. Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) ("[I]n Washington the expectations of the insured cannot override the plain language of the contract."). Here, there is no ambiguity. *See Quadrant*, 110 P.3d at 737 ("[W]hile exclusions should be strictly construed against the drafter, a strict application should not trump the plain clear language of an exclusion such that a strained or forced construction results."). The Additional Conditions Endorsement—when read in isolation and in the context of the entire policy—clearly requires Alis to take the actions enumerated therein.[8] (*See* Policy at 70.) Alis did not. *See supra* § II. Moreover, the Policy does not state or otherwise indicate that the conditions applied only to claims directly related to Alis's subcontractors (*see* Policy at 70), and in any event, Holeshot alleges multiple breaches related to Alis's use of subcontractors (Underlying Compl. ¶¶ 2.5-2.7). The court may not, as Alis invites it to, "modify clear and unambiguous language in an insurance policy." *W. Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 491 P.2d 641, 655 (Wash. 1971).

For these reasons, the court finds that there are no genuine disputes of material fact regarding whether Alis is entitled to coverage under the contract and therefore whether Developers has a continuing duty to defend and indemnify. Accordingly, the court grants Developers' motion for summary judgment.

//

---

[8] Alis identifies no other portions of the Policy that create ambiguity regarding the Additional Conditions Endorsement. (*See* Resp.) The court finds no apparent ambiguity and will not further scour the record in search of a disputed fact. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

## IV.    CONCLUSION

For the reasons set forth above, the court GRANTS Developers' motion for summary judgment (Dkt. # 29).  In addition, the court ORDERS Developers and Holeshot to jointly file a statement of no more than two (2) pages stating what—if anything—remains pending in this matter.  *See supra* at n.2.  They must file their submission no later than Friday, April 20, 2018.

Dated this 16th day of April, 2018.

JAMES L. ROBART
United States District Judge